UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY THOMAS, et al.,

      Plaintiffs,                           Case No. 1:09cv879

vs.

                                       Magistrate Judge Bowman

NATIONAL COLLEGE OF
VIRGINIA, INC.

         Defendant.

**MEMORANDUM OF OPINION AND ORDER**

This matter was originally initiated by fourteen former students of Defendant National College of Virginia. (hereinafter "National" or "National College").[1]  Plaintiffs, all of whom were students in National's Surgical Technology program at its Cincinnati campus, allege that National College violated Ohio Law by misrepresenting their accreditation status and the availability of externship sites, a requirement to complete the program.  Specifically, Plaintiffs amended complaint, based on diversity jurisdiction, asserts claims against National College for violations of the Ohio Consumer Sales Practices Act, breach of contract, and fraudulent inducement.   Plaintiffs seek compensatory damages and treble damages pursuant to Ohio Revised Code § 1345.09.

Through mediation, the claims of ten Plaintiffs have been resolved.   An additional named Plaintiff voluntarily dismissed her claims.  Thus, the claims of three

---

[1] National College is a private institution that awards degrees in a number of fields of study and has numerous locations throughout the country.

Plaintiffs, Martina Lummus, Jennifer Parsons, and Antoinette Prosser remain pending before the Court. This civil action is now before the Court on Defendants' motion for summary judgment and supporting documents (Docs. 42, 43, 44) and the parties' responsive memoranda. (Docs. 49-59, 61).[2] The parties have consented to the exercise of jurisdiction by the Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 20). For the reasons set forth herein, National's motion for summary judgment is granted in part and denied in part.

### I. Background and Facts

At the time National's Cincinnati campus opened in 2005, it was accredited by the Ohio State Board of Career Colleges and Schools to offer degrees and authorized to offer a surgical technology program. (Doc. 43, Affidavit of Anna Counts ("Counts Aff."). Program specific accreditation is also available through the Commission on Accreditation of Allied Health Professionals ("CAAHEP"). Accreditation by this independent entity permits surgical technology graduates to take the Certified Surgical Technology exam to become certified surgical technicians. The Surgical Technology Program was introduced at National College in June of 2005. (Counts Aff. ¶ 7). In July 2007, National College submitted a request for accreditation from CAAHEP. *Id.* In evaluating a request for accreditation, CAAHEP relies on a recommendation made by the Accreditation Review Committee on Education and Surgical Technology (ARC/ST). At the time National College's Surgical Technology program began, accreditation from

---

[2] Also pending before the Court is a motion to strike Plaintiffs' supplemental materials filed in opposition to Defendant's motion for summary judgment. (Doc. 68).

CAAHEP was not available because ARC/ST requires that a school have surgical technology students in their last term before it will conduct a visit to the campus. *Id.* A site visit by the ARC/ST visiting team is a prerequisite for accreditation by CAAHEP. *Id.*

After submitting the request for accreditation, the next step in the CAAHEP process required National College to submit a "self-study." *Id.* at ¶ 8. The self-study documentation was submitted to ARC/ST on March 25, 2008. The ARC/ST site visit was conducted on May 15th and 16th, 2008. *Id.* On June 28, 2008, ARC/ST issued its on-site assessment of the surgical technology program at National College. (Doc. 57[3]). The assessment identified the strengths and concerns within the program, and requested that additional information by submitted. Specifically, ARC/ST expressed concern relating to the inadequate number of clinical affiliation to meet the program needs and requested, *inter alia*, documentation demonstrating that the program has sufficient clinical affiliation sites and slots for the program's enrollment capacity to achieve the outcomes of the program. *Id.* Thereafter, on October 1, 2008, ARC/ST informed National College that the Accreditation Review Committee voted unanimously to table the recommendation for initial accreditation of the National's surgical technology program in Cincinnati, pending receipt of further documentation and

---

[3] Document 57 includes copies of documents from National's ARC/ST accreditation file for its Cincinnati Surgical Tech program. National asserts that such documents are not properly authenticated and therefore should be stricken. As explained below, the undersigned finds that such documents are properly considered on summary judgment and National's motion to strike is not well-taken.

clarification as outlined in the June 2008 assessment. National College was ultimately approved for accreditation by CAAHEP in May 2010. (Counts Aff, ¶ 8).

Students who have graduated from National College's surgical technology program are now eligible to sit for certification as Surgical Technologists by the Liaison Council on Certification for the surgical technologist (now known as The National Board of Surgical Technology and Surgical Assisting). *Id.* at ¶ 9. Surgical Technology students who graduated prior to May 2010 are "grandfathered," that is, they are eligible to take the certification examination if they were enrolled as of the site visit, which took place in May 2008. *Id.*

During the time of Plaintiffs' enrollment, it was the practice of National College to inform all incoming students that the surgical technology program had not yet been accredited by CAAHEP. Enrolling students were provided a written disclosure approved by Lenora Downing on January 5, 2006 (also referred to as the "Downing Memorandum"), a National College Vice President, that explained the CAAHEP accreditation status. (Doc. 43, Downing Aff., ¶ 2). The Downing Memorandum states as follows:

> National College of Business and Technology has been granted institutional accreditation from ACICS, The Accrediting Council for Independent Colleges and Schools. Accreditation is a status granted to an institution that meets or exceeds the Accrediting Council's stated criteria of education quality. Institutional Accreditation means the entire institution has been assessed, from the governance and financial stability to the programs of study and student services of that institution.
>
> In addition, National College of Business and Technology is in the process of applying for programmatic accreditation of the Surgical Technology Program by CAAHEP, The Commission on Accreditation of

4

Allied Health Education Programs, which may be granted upon recommendation of the American Colleges of Surgeons (ACS) and the Association of Surgical Technologists (AST).  Programmatic accreditation is in addition to institutional accreditation, and is an assessment of a particular program of study.

The college has coordinated the timing of the accreditation process with CAAHEP so that its first graduating class may be incorporated in the requested grant of accreditation and therefore be eligible to sit for the Certified Surgical Technology exam administered through the Liaison Council on Certification of for the Surgical Technologist.

Although the college anticipates that it will be successful in its request for programmatic accreditation, CAAHEP cannot and has not guaranteed that the college's application for accreditation will be granted or that it will be granted or effective any specific future date.

By signing below, you are acknowledging receipt of this information regarding the accreditation status of the Surgical Technology program.

(Downing Aff., Ex. 2).

The admissions personnel at National College in Cincinnati were instructed to give the memorandum to all incoming students and have the students sign the memorandum.  (Doc. 43, Downing Aff. ¶ 2). The admissions personnel were also instructed to retain the original documents in the student's records.  *Id.*

Additionally, in order to be awarded an Associate's Degree in Surgical Technology at National, students must complete basic course work in the areas of English, Math, and History, as well as core class for the Surgical Technology program such as Anatomy, Medical Terminology, Pharmacology, Surgical Technology and Surgical Procedures.  The final course needed to complete the Surgical Technology program is an externship class.  During the externship course, students spend approximately 11 weeks at an extern site.  The sites are typically medical facilities

5

where the students are trained and evaluated by preceptors who provide real world experience to the students in operating rooms.[4]

**Jennifer Parsons**

Ms. Parsons learned about National's surgical technology program through a supermarket employment newspaper.  (Doc. 44, Ex. 2, Parsons dep. at 25).  At the time she saw the National ad at the supermarket, Ms. Parsons had previously contacted Cincinnati State about their program and learned that they had a three-year waiting list.  Parsons contacted National's Cincinnati campus about the surgical tech program in March 2006.  *Id.* at 25.  At her first interview, she was told that National College's surgical tech program did not have a waiting list.  *Id.*  Neither CAAHEP accreditation nor surgical technician certification were discussed at Ms. Parsons initial visit to National College. (Parsons dep. at 95).   She enrolled at National College in April of 2006.

At the time Ms. Parsons enrolled, she was provided with a form explaining accreditation; however the form discussed the accreditation status of the medical assisting program.  (Doc. 44, Parsons dep. 70-71).  This was a mistake on the part of the admissions officer, who inadvertently presented the wrong form to Ms. Parsons.  Ms. Parsons testified that she first learned that the surgical technology program was not accredited in April 2008.  At that time, Plaintiff testified that Thomas Jefferson, the director of the College, met with surgical technology students and explained that the

---

[4] Preceptors are surgical technicians employed by the medical facility who observe the students in the operating room.

program was not yet accredited.  *Id.* at 78.  Thereafter, on May 15, 2008, Ms. Parsons was interrupted by a man in a suit while she was taking a final exam.  According to Ms. Parsons, the man did not identify himself and told her to sign the Downing Memorandum if she wanted to graduate.  She testified that she signed it without reading it.  (Parsons dep. at 78-79).

Her academic classes spanned from June 2006 through June 2008.  Ms. Parsons testified that she secured her own extern site, with her current employer, Christ Hospital, after learning that National was having trouble finding extern sites for its surgical technology students.  *Id.*, 49-52.  She then served an externship at Christ Hospital from June 2008 through September 2008.  She later received her diploma from National College in June 2009.  However, he could not sit for the certification exam, as a graduate of a non-accredited program, until May 2010, when the program received conditional accreditation.  Since she was a student at the time of the on-site visit, Ms. Parsons may now be considered as a graduate from an accredited program, with eligibility for the certification examination.  (Counts Aff, ¶9).  However, Ms. Parsons has not taken National College's refresher course for the certification examination, due to her employment commitments and distrust of the National College.

Ms. Parsons testified that she could not find employment as a surgical technician because she was not certified and because National College's surgical technician program was not accredited at the time she graduated.  (Parsons dep, at 56).  She further testified that if she had known that National's surgical tech program was not accredited she never would have enrolled at National College.  Accordingly,

7

based on National's alleged misrepresentation or misinformation relating to its surgical tech program,  Ms. Parsons seeks compensation for money paid to National College and past and future wages lost as a result of attending National College.

**Antoinette Prosser**

Ms. Prosser learned about National's surgical tech program through a billboard and a supermarket employment newspaper. (Doc. 44, Prosser dep., 26-27).  Ms. Prosser contacted National College in November 2006.  Ms. Prosser testified that she met with an admission representative to discuss the surgical technology program and was told that many clinical sites were available.  (Prosser dep., 33-34).  She further testified that she was told that a certification examination would be taken and National career department would assist her in finding employment after graduation.  Based on the information she obtained from the admissions representative, Ms. Prosser enrolled in National's surgical tech program in December 2006.  At that time, Ms. Prosser executed many forms, including the Downing Memorandum.  She testified that she did not read the forms in detail.

She began classes in March of 2007.  At some point in 2008, she was surprised to learn from other students that there were an insufficient number of clinical sites and that the surgical tech program had not yet received CAAHEP accreditation.  (Prosser dep., 54-57).  Ms. Prosser completed her academic classes in February 2009. However, at that time, there were not sufficient extern sites available for surgical technology students in the Cincinnati area.  National explained the delay to Ms.

8

Prosser, and she agreed to remain in the program.  (Prosser dep. 59).  Ms. Prosser was a on a waiting list for an extern site for approximately five months.

Ms. Prosser was then placed in an externship at Cincinnati Children's Hospital for eight weeks beginning in June 2009.  She was taken out of the externship for about a month then returned to Children's from September to October, at which time she successfully completed her externship.  She was awarded her degree in 2010.

Ms. Prosser testified that she attempted to find employment as a surgical technologist.  She applied on-line and in person at several medical facilities for a surgical tech position, including Children's Hospital, Mercy Fairfield Hospital, Jewish Hospital, Beacon Orthopedic, Red Bank Surgery Center, and Evendale Surgery Center.  At a job fair a representative from Mercy Fairfield, told Ms. Prosser that a graduate from National College would not be considered because its program was not accredited.  In March 2010, Ms. Prosser enrolled in the nursing program at Brown Mackie College.  (Doc. 44, Prosser dep. 16, 95, 96).  Her enrollment in the nursing program occurred prior to National's CAAHEP accreditation and she has not taken the certification exam for surgical technologists.

Similar to Ms. Parsons, Ms. Prosser asserts that she would not have enrolled in the surgical technology program at National College if she had known the program was not accredited.  *Id.,* 56-57.  As a result of National's alleged misrepresentation of the program, she also seeks compensation for money paid to National College and past and future wages lost as a result of attending National College.

**Martina Lummus**

Ms. Lummus learned of the surgical technology program at National College through a television advertisement she viewed in April 2006.  She visited National's campus and met with an admission representative as well as the surgical technology program director.  She testified that she asked if the program was accredited and if clinical sites were available.  She was assured by the program director that the program would be accredited by her graduation and that there were clinical sites available.  (Lummus dep., 32, 33, 113, 114).  According to Ms. Lummus, the program director did not mention anything related to certification.  *Id.,* 39.

Ms. Lummus then applied to National College in May 2006 and began classes the next month.  She completed her academic class in May 2008.  In 2008, she was informed of National's College's difficulty in finding extern sites.  *Id.,* 50.  She agreed to remain in the program and wait until sites were available.  *Id.,* 51.  While she was waiting for an extern site, Ms. Lummus attended a lab practice once a week.  During this period, Ms. Lummus testified that the program director told her that there were no extern sites because National sent the wrong paper work to CAAHEP, the accreditation agency.  *Id.*, 58.  Ms. Lummus waited approximately one year before she was placed in an externship.

She began her externship in June 2009 at Mercy Hospital.  After five weeks, she was removed from the site due to poor performance and disagreements with her preceptor. (Lummus dep., 78-82).  She was then reassigned to Cincinnati Children's Hospital in October 2009.  After two weeks, she was removed from the site at

10

Children's request because she did not have the skills to perform in the operating room. Thereafter, representative from National College met with Ms. Lummus and suggested that she may be better suited for another program. *Id.*, 89-92. Ms. Lummus did not return to National College as a student after that meeting and did not graduate from the program.

Ms. Lummus asserts that if she knew that the surgical tech program would not be accredited at graduation, that the accreditation process was not coordinated and had not begun, that there were an insufficient number of clinical sites, and that employment and sitting for the certification examination would not be possible at graduation, she never would have enrolled at National College. As a result of these alleged misrepresentations on the part of National College, Ms. Lummus seeks compensation for lost wages and the cost of attending classes at National College.

National College now moves for summary judgment on Plaintiffs' claims and assert that they are entitled to judgment as a matter of law. National argues that the facts do not establish any violations for fraud and/or the Ohio Consumer Sales and Practices act as there is no evidence that National knowingly misled or misinformed Plaintiffs. National further asserts that Plaintiffs Prosser and Lummus have waived any breach of contract claim associated with the delay in being assigned externship sites. Plaintiffs ask the Court to deny National's motion, asserting that genuine issues of material fact exist, thereby precluding summary judgment.

## II. Analysis

### A. Summary Judgment Standard of Review

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the Plaintiff, however, does not mean that the court must find a factual dispute where record evidence contradicts Plaintiff's wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that

12

supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

To demonstrate a genuine issue of fact, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). It is the Plaintiff's burden to point out record evidence to support her claims. "[T]he Court has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin County Bd. Of Com'rs*, 637 F. Supp.2d 561, 576 (S.D. Ohio 2009) (citing *Williamson v. Aetna Life Ins. Co.,* 481 F.3d 369, 379 (6th Cir. 2007)).

**B. National is entitled to Judgment as a Matter of Law with respect to Plaintiffs' claims under ORC 1345.03, breach of contract and fraudulent inducement**

1. *Ohio Revised Code § 1345.03 - Unconscionable Acts or Practices*

Under Section 1345.03 of the Ohio Revised Code, liability may be imposed for unconscionable acts or practices in connection with a consumer transaction. In determining whether an act or practice is unconscionable, the following seven circumstances should be taken into consideration:

(1) Whether the supplier has knowingly taken advantage of the inability of

13

the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement;

(2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers;

(3) Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction;

(4) Whether the supplier knew at the time the consumer transaction was entered into that there was no reasonable probability of payment of the obligation in full by the consumer;

(5) Whether the supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier;

(6) Whether the supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment;

(7) Whether the supplier has, without justification, refused to make a refund in cash or by check for a returned item that was purchased with cash or by check, unless the supplier had conspicuously posted in the establishment at the time of the sale a sign stating the supplier's refund policy.

Ohio Rev. Code § 1345.03.

Thus, scienter is a necessary element and must be proven in order to find an act unconscionable under ORC §1345.03. *Id. See also Karst v. Goldberg*, 88 Ohio App. 3d 413, 417, 623 N.E.2d 1348, 1351 (1993). As such, to impose liability under this section, Plaintiffs must show that National College knowingly misled Plaintiffs. National College asserts that none of the seven circumstances outlined in section 1345.03(b)

14

apply in this case, nor have Plaintiffs alleged a specific violation of that section.

Plaintiffs' complaint alleges that National College knowingly committed unconscionable acts in violation of ORC §1345.03 by taking advantage of the Plaintiffs' inability to reasonably protect their interests because of their inability to understand the language of the Downing Memorandum. Plaintiffs argue that the language contained in the Downing Memorandum establishes that National knowingly committed unconscionable acts. Specifically, Plaintiffs contend that the memorandum misrepresents that the accreditation process had begun before January 5, 2006 and that the college has coordinated the timing of the accreditation process. According to Plaintiffs, to be coordinated, the self-report would have had to been submitted prior to December 2007 and the on-site visit would have had to have been during the period from December 2, 2007 to March 10, 2008, which was the final term of the first class. Plaintiffs' self-serving interpretation of the language contained in the Downing Memorandum lacks merit and any evidentiary support.

Notably, as outlined above, the Downing Memorandum stated in relevant part:

> The college has coordinated the timing of the accreditation process with CAAHEP so that its first graduating class *may* be incorporated in the requested grant of accreditation and therefore be eligible to sit for the Certified Surgical Technology exam administered through the Liaison Council on Certification of for the Surgical Technologist.

> Although the college anticipates that it will be successful in its request for programmatic accreditation, *CAAHEP cannot and has not guaranteed that the college's application for accreditation will be granted or that it will be granted or effective any specific future date.*

(Downing Aff, Ex. 2)(Emphasis added).

15

The language of the Downing Memorandum accurately states that National College did not yet have CAAHEP programmatic accreditation for Surgical Technology and that National College could not guarantee such accreditation at any specific point in time. Furthermore, the undisputed evidence establishes that National College advised students of the status of accreditation at the time they enrolled, as all enrolling students were required to sign the Downing Memorandum.

Additionally, there is no evidence that National knowingly misrepresented information related to the availability of extern sites at the time of enrollment. As noted by National College, the undisputed evidence shows that National College apprised the students of the delay in assigning externships because of the lack of sites. Accordingly, Plaintiffs' have presented no evidence to show that National College *knowingly* misled students. National College is therefore entitled to judgment as a matter of law with respect to Plaintiff's claims under ORC 1345.03

### 2. Fraudulent Inducement

The Court next turns to Plaintiffs' fraudulent inducement claim. "The elements of an action in fraud are as follows: (a) a representation or, where there is a duty to disclose, concealment of a fact (b) that is material to the transaction at hand (c) made falsely with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Hacker v. Natl. Coll. of Bus. & Tech.*, 2010-Ohio-380, 186 Ohio App. 3d 203, 209, 927 N.E.2d 38,

16

43.  National College asserts that Plaintiffs' have failed to establish the elements of fraud and are therefore entitled to judgment as a matter of law.   The undersigned agrees.

Plaintiffs' assert that that the elements of fraud are met because "[t]here is a written representation that the accreditation process had begun and that it was coordinated.  These were false when written and when delivered to the students.  Oral statements were made to the same effect.   The students relied on these misrepresentations to their detriment."  (Doc. 49 at 27).   Plaintiffs, however, do not provide any facts in support of these assertions as outlined in Rule 56(c) of the Federal Rules of Civil Procedure.  Notably, pursuant to Rule 56(c), a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

As explained above, there is no evidence in the record to establish that National College knowingly made false representations with the intent to mislead students with respect to the availability of extern sites and/or CAAHEP accreditation.   Plaintiffs' cannot establish that the elements of fraud under the relevant facts.  Accordingly, National College is also entitled to judgment as a matter of law with respect to

17

Plaintiffs' fraudulent inducement claims.

### 3. Breach of Contract

As noted above, Plaintiffs Prosser and Lummus faced a significant delay before being placed in externship sites. Even if this delay constituted grounds for asserting a breach of contract claim, National College asserts that Ms. Prosser and Ms. Lummus waived any such breach of contract claim when they agreed to remain in school after each were informed of the delay. Notably "a party may relinquish a right by either express words or by conduct which seems to dispense with performance at the designated time." *Hacker, v.* 927 N.E.2d at 42 (citations omitted). Even if time is of the essence, a time requirement "may be waived when the party to be benefitted 'does any act inconsistent with the supposition that he continues to hold the other party to his part of the agreement.' " *Id.*

The *Hacker case* also involved claims brought against National College by former student*s.* Alleging nearly identical facts relating to the availability of extern sites, the *Hacker* Court found that students waived any alleged claim for breach of contract against college arising from college's failure to place them in externship programs during their final term. *Id.*

Plaintiffs do not dispute that there has been a waiver of contractual liability with respect to the delay in placing Ms. Prosser and Ms. Lummus in externships. Instead, they argue that such a waiver extends only to damages for the delay in performance and that every contract contains an implied good faith provision. Plaintiffs assert that "good faith is breached by dishonesty, deception and unconscionable acts" and the

18

evidence taken in favor of Plaintiff, "surely establishes a breach of implied good faith." (Doc. 49 at 27).    Again, Plaintiffs have no offered no evidentiary basis for their assertions.

Accordingly, based on the foregoing, the undersigned finds that National College's motion for summary judgment is well-taken with respect to Plaintiffs' claims under ORC 1345.03, fraudulent inducement and breach of contract.

**C.  Genuine issues of material fact remain as to Plaintiffs' claims for unfair deceptive acts or practices.**

Upon careful review, the undersigned finds that Plaintiffs' remaining claim for unfair deceptive acts or practices under the Ohio Consumer Practices and Sales Act ("CSPA") should proceed to trial.  The CSPA provides that "no supplier shall commit and unfair or deceptive act or practice in connection with a consumer transaction." ORC 1345.02(A).  The statute goes on to provide the following non-exhaustive list of deceptive acts:

(1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;

(2) That the subject of a consumer transaction is of a particular standard, quality, grade, style, prescription, or model, if it is not;

(3) That the subject of a consumer transaction is new or unused, if it is not;

(4) That the subject of a consumer transaction is available to the consumer for a reason that does not exist;

(5) That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as

a good faith substitute does not violate this section;

(6) That the subject of a consumer transaction will be supplied in greater quantity than the supplier intends;

(7) That replacement or repair is needed, if it is not;

(8) That a specific price advantage exists, if it does not;

(9) That the supplier has a sponsorship, approval, or affiliation that the supplier does not have;

(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false.

Ohio Rev. Code §1345.02(b).

Thus, a consumer does not need to prove intent or scienter to prove a violation of R.C. 1345.02. *Karst,* 623 N.E.2d at 1351. When determining whether a practice is deceptive, courts look at the incident from the consumer's standpoint. *McPhillips v. US Tennis Assn.*, (Lake App.) 2007-Ohio-3594 at ¶ 27. The focus is on the perception of the consumer rather than the intent of the supplier. *D & K Roofing v. Pleso,* (Turmbull 1991) 77 Ohio App.3d 181, 601 N.E.2d 561. The claimants must show that respondents' conduct or statements were likely to induce in claimants' minds impressions that were not in accord with the facts. *Chestnut v. Progressive Cas. Ins.*, 166 Ohio App.3d 299, 2006-Ohio-2080 at ¶23; *In Re Rebarchek* (Bkrtcy. N.D. Ohio 2002) 293 B.R. 400; *Motzer v. Ohio Attorney General* (Butler, 1994) 95 Ohio App.3d 183, 642 N.E.2d 20. Failure to disclose a substantial fact may constitute an unfair or deceptive act. Unif. CSPA §3(a), 7A U.L.A, 212 (1999): *Ford v. Brewer,* 86AP-626, 1986 WL 14259 (Ohio Ct. App. Dec. 9, 1986); *Walker v. Dominion Homes, Inc.*, 164

Ohio App.3d 385, 842 N.E.2d 570, 2005 -Ohio- 6055, ¶ 14. However, where the record shows that the consumer could not be deceived, no violation has occurred. *Ferron v. EchoStar Satellite*, LLC, 727 F.Supp.2d 647, 653 (S.D. Ohio 2009).

Here, viewing the facts in favor of Plaintiffs', genuine issues of material fact exist as to whether National's Surgical Technology degree program had the approval, performance characteristics, or benefits that it did not have; and/or that the National College had a sponsorship, approval, or affiliation that it did not have. *See* ORC §1345.02(B)(1) and (9).

Plaintiffs' testified that upon graduation, National College represented that they would be qualified to work in an Operating Room as a surgical tech; and could in fact secure employment as a surgical tech in the Cincinnati region. National College represented that it was in the process of securing programmatic CAAHEP accreditation and was hopeful it would be granted by the date of the first graduating class. National College also represented that there were no delays or waiting list for clinical-extern placement, and that the program had contracts with clinical facilities.[5] Such representations were not accurate and could be found to induce in Plaintiffs' minds impressions that were not in accord with the facts. Thus, a reasonable juror could find that National unfairly led Plaintiffs' to believe that upon graduation, they would be fully qualified to obtain employment as surgical technicians. However, the facts establish

---

[5] National acknowledges that fact questions remain as to Plaintiffs Lummus' and Prosser's claim under 1345.02 as a result in the delay of being assigned externship sites and is not seeking summary judgment on those claims. See *Hacker v. Natl. Coll. of Bus. & Tech.*, 2010-Ohio-380, 186 Ohio App. 3d 203, 927 N.E.2d 38 (Fact issue remained whether college made unfair or deceptive representation to incoming students that required externships would be available during final term, precluding summary judgment on claim under CSPA).

otherwise.

Plaintiffs assert the advertisements and sale representatives' presentations were deceptive because did not have statements of limitation, including the possibility that graduates may be ineligible to sit for the certification examination and employment is highly dependent upon graduation from an accredited surgical tech program. Notably, Plaintiffs were told they could obtain employment as a surgical technician after graduation.  However, the majority of surgical facilities in the Cincinnati region require surgical technicians to be certified (*See* Doc. 57, Hospital Surveys); and Plaintiffs Parsons and Prosser were not eligible to sit for the certification exam upon graduation. As detailed above, in order to become a certified surgical technician, students must graduate from a CAAHEP accredited program and pass a certification examination. However, National was not approved for CAAHEP accreditation until May 2010 after Ms. Parsons and Ms. Prosser graduated from National.

The Court recognizes that the Downing Memorandum informed enrolling students that National was in the process of obtaining CAAHEP accreditation, coordinating its efforts so that accreditation would be obtained at the time the first class graduated and could not guarantee such accreditation at any specific time.  However, factual disputes exist as to whether National's conduct may have delayed the CAAHEP accreditation process.  (*See* Doc. 57).  Furthermore, neither the language in the Downing Memorandum, nor other program materials in the record, articulate the connection between CAAHEP accreditation, surgical technologist certification and employment.  Whether such omissions were deceptive under Ohio law involves factual

determinations that cannot be made by the Court on summary judgment.

Accordingly, National's motion for summary judgment is denied with respect to Plaintiffs' claims under Ohio Rev. Code §1345.02.[6]

### D. **Motion to Strike**

In response to National's motion for summary judgment, Plaintiffs submitted copies of documents taken from National College's ARC-ST accreditation file for its Cincinnati Surgical Tech Program. (Doc. 57). However, the documents were not attached to an affidavit of counsel or otherwise authenticated. In an apparent effort to authenticate these documents, Plaintiffs' filed a supplemental memorandum attaching a coverletter indicating that the documents were obtained were National's counsel as part of another lawsuit. (Doc. 66). Defendant's do not dispute the authenticity of the documents, but instead argue that the documents should be stricken because they are not properly authenticated and therefore inadmissible. (Doc. 68).

Although the general rule is that unauthenticated documents must be disregarded, *see Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir.1993); some courts have nevertheless considered unauthenticated documents in deciding a motion for summary judgment where the objecting party simply argued that the proponent of the documents failed to properly authenticate the documents, as opposed to challenging the authenticity of the documents. *Moore v. Baptist Mem'l Coll. of Health Sciences*, No.

---

[6] In light of the determination that this claim should proceed to trial, National College's motion for summary judgment as to Plaintiffs' claims for compensatory damages is not well-taken as a jury will decide what, if any, damages Plaintiffs' have suffered as a result of National's conduct. With respect to Plaintiff's claim for treble damages under Ohio Revised Code 1345.09, if a jury awards compensatory damages for violations of the Ohio Consumer Sales and Practices Act, Plaintiffs' may then file a request for treble damages with the Court. *See Nelson v. Pieratt*, 2012-Ohio-2568, 2012 WL 2088635.

08-231, 2010 WL 100551 (W.D. Tenn. Jan. 7, 2010) (citing *Starks-Umoja v. Fed. Express Corp.*, 341 F. Supp. 2d 979, 984 (W.D. Tenn. 2003)(denying the motion to strike exhibits "[i]n the interest of fairly considering all of the evidence that Plaintiff contends supports her claims"); *see also Wilks v. Pep Boys*, No. 3:02–0837, 2006 WL 2821705, at *5-6 (M.D. Tenn. Sept. 26, 2006) (finding that, although exhibit was not properly authenticated, given that the defendant did not contest the exhibit's authenticity, "and the fact that the defendant itself produced the very document it now challenges, the court will not strike this exhibit").

Accordingly, in the interests of justice and because the authenticity of the documents is not challenged, the undersigned finds that such documents are properly before the Court. Defendant's motion to strike is therefore **DENIED**.

### III. Conclusion

For these reasons, **IT IS THEREFORE ORDERED THAT**: (1) Defendant's motion to strike (Doc. 68) is **DENIED;** (2) Defendant's motion for summary judgment (Doc. 42) is **GRANTED** as to Plaintiffs' claims under Ohio Rev. Code 1345.03, breach of contract and fraudulent inducement; and (3) Defendant's motion for summary judgment is **DENIED** as to Plaintiffs' claims under Ohio Rev. Code 1345.02.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

24